**FILED**

07/14/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0409



## SYNOPSIS OF THE CASE[1]

**2026 MT 150, DA 23-0409**: **STATE OF MONTANA**, Plaintiff and Appellee, v. **KATHERINE ANNE PROCTOR,** Defendant and Appellant.

The Montana Supreme Court has upheld Katherine Anne Proctor's conviction by a jury of assault on a minor, concluding the district court properly admitted expert testimony related to diagnosing non-accidental trauma in an infant, an impermissibly overbroad warrant was harmless error, and prosecutorial misconduct during closing arguments did not ultimately prejudice Proctor's rights to a fair trial.

Proctor was convicted of assault on a minor in district court. The prosecution began after Proctor's four-month-old daughter, P.P., was brought to a hospital presenting with seizures and lethargy. Upon further medical examination, doctors discovered P.P. had a swollen brain, retinal hemorrhages, broken ribs at various stages of healing, a broken femur, a broken toe, injuries to her neck, bruising, abrasions, and a brain contusion. An abuse investigation followed. The State obtained a warrant to search Proctor's phone, allowing police to extract "all data currently stored" on the device, "including but not limited to" nearly every category of data contained within the cell phone. The extraction uncovered text messages between Proctor and her husband as well as activity by Proctor on the Pinterest application and internet searches for a criminal defense attorney during the time P.P. was in the hospital. The prosecutor then referenced this evidence during the State's closing argument, casting Proctor as having a bad character or a guilty conscience.

At trial, Proctor moved to suppress the admission of expert testimony related to "shaken baby syndrome," arguing that the mechanics of shaking a baby and the resulting triad of symptoms is unreliable. However, the State's expert witness did not use the term "shaken baby syndrome"; instead, she referred to P.P.'s diagnosis as non-accidental trauma or abusive head trauma caused by a rapid acceleration and deceleration of P.P.'s body. The State's expert further noted that P.P. had rib fractures at various stages of healing, injuries to cervical ligaments in her neck, bruising on the brain stem, and opined that the rib fractures were consistent with gripping an infant's chest. The District Court denied Proctor's motion, finding that the constellation of P.P.'s injuries distinguished her case from cases in which only the Shaken Baby Syndrome triad appeared.

The Montana Supreme Court agreed. It held the presence of P.P.'s additional symptoms factually distinguished Proctor's case from other cases in which a conviction was secured on the Shaken Baby Syndrome triad alone. P.P. was diagnosed with non-accidental trauma, not shaken baby syndrome, and P.P.'s other multiple injuries consisting *inter alia* of rib fractures, injuries to the cervical ligament of her neck, bruising on the brain stem, and bruising on other parts of her body were part of the constellation of symptoms upon which the State's medical expert based her opinion of abuse.

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

At trial, Proctor also moved to suppress evidence obtained from her cell phone on the basis the warrant was impermissibly overbroad and unparticularized. The District Court denied the motion, finding the warrant was sufficiently limited temporally and in the scope of data which could be searched.

The Montana Supreme Court disagreed with the District Court. The Fourth Amendment of the United States Constitution and Article II, § 11 require that warrants be specific as to the evidence being sought. These privacy concerns and specificity requirements are of greater significance with modern smart phones given the amount of personal information available contained within them. The Court held the warrant obtained here granted law enforcement unfettered access to the entirety of Proctor's phone by including "catch all" language. Thus, the warrant to search Proctor's phone was impermissibly overbroad. Nonetheless, this error did not merit reversal of Proctor's conviction, as other cumulative evidence admitted at trial rendered the admission of that tainted evidence harmless in the context of the trial.

The Special Concurrence concluded the warrant was not overbroad and, therefore, found no error in admitting the cell phone evidence. The Special Concurrence noted the affidavit in support of the warrant identified the specific dates third parties observed P.P.'s injuries, specific types of app data, and Proctor's heavy phone usage at the hospital immediately following P.P.'s diagnosis. The warrant identified a specific crime and P.P.'s infancy supplied a temporal limitation. The Special Concurrence concluded that the warrant for Proctor's phone provided an objective standard for what items may be seized and therefore was not overly broad.

The Dissent agreed that the warrant was overly broad but disagreed that admission of the cell phone evidence was harmless. The Dissent maintained that the State did not use the phone evidence merely to prove isolated facts but instead used photographs, text messages, and attorney-search history to support a broader narrative that Proctor responded abnormally during P.P.'s hospitalization and sought counsel because she was guilty.

Proctor made an additional argument on appeal that the prosecutor's statements during closing, unobjected to at trial, severely compromised the fairness of the proceedings. The Montana Supreme Court concluded the prosecutor had indeed engaged in misconduct by making "disturbing" and "reprehensible" comments regarding Proctor's character, based in part on the tainted evidence obtained from the overbroad warrant. However, these statements, in the context of the overwhelming medical evidence of P.P.'s injuries and the chronology of when P.P. was last in Proctor's exclusive control presented prior to the onset of her injury, did not prejudice Proctor's right to a fair trial.

The Dissent would have reversed because the prosecutor during closing argument improperly invited the jury to judge Proctor by her character and decision to search for legal counsel while her child was hospitalized. Because that argument relied on unlawfully obtained phone evidence and invited an inference of guilt from seeking legal advice, the Dissent concluded Proctor did not receive a fair trial and would reversed the conviction.